UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IVAN LEE PAGE,

        Petitioner,

                              CIVIL CASE NO. 12-CV-12424
v.                        HONORABLE LINDA V. PARKER
                            UNITED STATES DISTRICT COURT

KEN ROMANOWSKI,
        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Ivan Lee Page ("Petitioner"), confined at the Oaks Correctional Facility in Manistee, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, petitioner challenges his conviction for first-degree premeditated murder, M.C.L.A. § 750.316. For the reasons stated below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

**I. Background**

Petitioner was convicted following a jury trial in the Genessee County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Here, defendant was charged with the first-degree murder of Deena Brown. Brown was a known prostitute whose body was found in a school parking lot in Flint. Her shirt was pulled up to her neck and she was wearing no shoes and only one sock. The cause of death was ligature strangulation and the manner of death was homicide. Defendant's DNA was found on the sweatshirt that was tied around Brown's neck, causing her death.[2] The other acts evidence concerned the deaths of Peeler and Price. Price, a prostitute, was found under a tree in a residential neighborhood in Flint. Price was nude except for a sweatshirt and bra, which were pulled up around her neck. The cause of Price's death was manual strangulation and the manner of death was a homicide. Defendant's semen was found in Price's vagina and rectum. Finally, the body of Peeler, a prostitute, was found near the sidewalk in a residential neighborhood in Flint. Peeler was nude except that she had on one shoe. Defendant's semen was found in Peeler's vagina. One medical examiner opined that cocaine intoxication was the cause of death, while another opined that asphyxia by smothering was the cause of death.
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> Regarding whether there was substantial evidence that defendant committed the murders of Peeler and Price, defendant's DNA was found on their bodies. There was evidence that both died of strangulation. Jerome Currie, defendant's jail cellmate, testified that defendant remarked to him that he (defendant) liked to "choke hos [sic]" and he "killed those ho's [sic], but they can't prove it; and the jury ain't gonna believe it because they ho's [sic] or prostitutes."

*People v. Ivan Lee Page*, No. 291790, 2010 WL 3893817, \*1-2 (Mich.Ct.App. Oct. 5, 2010).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 488 Mich. 1050, 794 N.W.2d 331 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The cumulative effect of the prosecutor's misconduct denied the

---

[2] Additionally, DNA found on Brown's underwear was a potential match with defendant. (Footnote original).

2

defendant a fair trial.

II. Trial counsel's failure to obtain a DNA expert.

III. The trial court improperly admitted other acts evidence testimony in violation of M.R.E. 404(B).

IV. Trial counsel failed to object to the prosecutor's repeated instances of misconduct; thereby constituting ineffective assistance of counsel.

(ECF No. 1 at Pg. ID 7-10, 12, 15-16, 18.)

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

### III. Discussion

**A. Claim # 1. The prosecutor's misconduct claim.**

Petitioner first alleges that he was denied a fair trial due to the cumulative effect of the prosecutor's misconduct. The respondent alleges that these claims are procedurally defaulted by trial counsel's failure to raise an objection at trial. Petitioner claims that his trial counsel was ineffective for failing to object to the instances of prosecutorial misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). Given that the cause and prejudice inquiry for the procedural default issues merge with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643–45. In order to obtain habeas relief on a prosecutorial misconduct claim, a

habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).

Petitioner first contends that the prosecutor improperly elicited and knowingly relied on the perjured testimony of their witness, Jeff Nye.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of

6

false testimony by the prosecutor. *Coe*, 161 F. 3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his or her story does not establish perjury. *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id*.

Petitioner first contends that the prosecutor knowingly elicited perjured testimony from witness Jeffrey Nye when Nye testified that petitioner's DNA could not be excluded from the sample taken from victim Brown's underwear, because Nye testified at the preliminary examination that petitioner could be excluded. Mere inconsistencies in Nye's testimony, without more, is not sufficient to show knowing use of false testimony by the prosecutor. *Coe, supra.* Furthermore, the Michigan Court of Appeals found that "It is possible that Nye changed his mind about the possibility of whether defendant could be a DNA match or that Nye simply misspoke at the preliminary examination." *Ivan Lee Page*, 2010 WL 3893817, at *4.

Petitioner has failed to show that Jeffrey Nye testified falsely about the DNA evidence. Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971). More importantly, assuming that Jeffrey Nye lied about whether petitioner could be a DNA match, petitioner is still not entitled to habeas relief on his perjury

7

claim, because he has failed to show that the prosecutor knew that Jeffrey Nye had testified falsely on this matter. *See Rosencrantz v. Lafler*, 568 F. 3d 577, 587 (6th Cir. 2009). Petitioner is not entitled to habeas relief on this part of his first claim, because he has presented no evidence that the prosecutor knowingly elicited perjured testimony or that Nye's testimony was perjured.

Petitioner next alleges that the prosecutor elicited perjured testimony from Detective Greg Hosmer and Sargent Mark Reeves when they testified that they followed every lead until it dead ended.

> The Michigan Court of Appeals rejected petitioner's allegation as follows:
>
> Defendant first points out that the prosecutor elicited testimony from the officer in charge that the police had allegedly considered and eliminated all other suspects and investigated all leads until dead ends were reached. The prosecutor also referenced this testimony in her closing argument. According to defendant, the elicitation of this testimony, as well as the closing argument remarks, were improper because the police did not actually investigate all reasonable leads. Assuming that the police did not in fact investigate all reasonable leads, the prosecutor would not be at fault in eliciting the challenged testimony unless she knew that she was eliciting perjured testimony. *See People v. Lester*, 232 Mich.App. 262, 276–277, 591 N.W.2d 267 (1998) (stating that the prosecutor's duty is to correct perjured testimony; she may not knowingly use false testimony to obtain a conviction). Defendant presents no evidence suggesting that the prosecutor knowingly elicited perjured testimony.

*Ivan Lee Page*, 2010 WL 3893817, at *2.

Petitioner is not entitled to habeas relief on this claim because he failed to show that the detectives testified falsely about following all of the leads. More importantly,

8

petitioner is still not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that the detectives testified falsely on this matter. *See Rosencrantz v. Lafler*, 568 F. 3d at 587.

Furthermore, as the Michigan Court of Appeals also noted, petitioner cannot show that any perjured testimony had any effect on the jury's verdict in light of the "strong, untainted evidence against him." *Page,* 2010 WL 3893817, at * 3. Petitioner's argument that the prosecutor elicited perjured testimony from Detective Hosmer and Sargent Reaves is without merit.

Petitioner next alleges that the prosecutor improperly vouched for the truthfulness of Lee Plum by implying that she had some special knowledge of the facts. Petitioner's argument references the prosecutor's remarks made during closing argument that Lee Plum was not lying when testifying and had no reason to lie.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999) (internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id*. The test for improper vouching for a witness is whether the jury

9

could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis*, 170 F. 3d 546, 550 (6th Cir. 1999) (internal citations omitted); *See also Griffin v. Berghuis*, 298 F. Supp. 2d 663, 674–75 (E.D. Mich. 2004). Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey*, 287 F. 3d 422, 433 (6th Cir. 2002).

Numerous cases have held that a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson*, 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel*, 133 Fed. Appx. 159, 165 (6th Cir. 2005); *U.S. v. Parker*, 49 Fed. Appx. 558, 563 (6th Cir. 2002); *See also Alder v. Burt*, 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003) (prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution's witness had an "axe to grind" or any other improper motive, when the prosecutor asked rhetorically whether a person who would burn a 19-year-old female's body to destroy

evidence would give truthful testimony; or when he asked whether prosecution's witnesses had any reason to lie).

During closing arguments, the prosecutor argued that Plum "didn't embellish and he could have." *Page*, 2010 WL 3893817, at * 3. He further argued that Plum "doesn't make up stuff.  Doesn't give you the perfect story.  He tells you what he can remember and what happened. . . . He didn't embellish a thing." *Id.* Further, the prosecutor asserted that Plum "had no reason at all to come in here to tell you anything but the truth." *Id.*

The prosecutor did not imply any special knowledge of the truthfulness of Plum's testimony, but merely commented on the testimony during closing argument and argued that Plum had no reason to testify falsely.  Accordingly, petitioner is not entitled to habeas relief on his prosecutorial misconduct claim for improper vouching.

Petitioner lastly contends that the cumulative effect of the prosecutor's comments and questions deprived him of a fair trial.  The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F. 3d 416, 447 (6th Cir. 2002). Petitioner's claim that the prosecutor's comments and remarks cumulatively deprived him of a fair trial is an inadequate ground for granting federal habeas relief, because it is essentially a cumulative errors claim. *See e.g. Noel v. Norris*, 194 F. Supp. 2d 893, 931-32 (E.D. Ark. 2002).  Petitioner is therefore not entitled to habeas relief on his first claim.

11

### B. Claims # 2 and # 4. The ineffective assistance of counsel claims.

The Court consolidates petitioner's second and fourth claims because they both involve the ineffective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable

probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination under the *Strickland* standard 'was incorrect, but whether that determination was unreasonable – a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id*. This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id*. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In his second claim, petitioner contends that trial counsel was ineffective for deciding not to hire a DNA expert, claiming that if counsel had hired a DNA expert,

13

counsel "could have laid the proper foundation and introduced to the jury the DNA evidence of other potential suspects found at the homicide scenes of Peeler, Price and Brown." (Habeas Petition, Attachment E.)

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F. 3d 662, 672 (6th Cir. 2006). Petitioner does not name nor attach an affidavit from a DNA expert explaining what testimony the expert would have provided, if called, nor does he name the other potential suspects that would have been identified.

Furthermore, additional sources of DNA would not have resulted in a different verdict. Since the victims were prostitutes, evidence of other men's DNA on the victims would not have been probative or surprising to the jury. Petitioner's DNA connected him to all three victims and he was seen with two of the victims just before they were murdered. Petitioner also told his cellmate that he liked to choke prostitutes, and that he had murdered prostitutes by choking them to death. Petitioner cannot demonstrate that if trial counsel presented testimony from a DNA expert that it would have made any difference to the outcome of his trial.

Petitioner is not entitled to relief on his second claim.

Petitioner's fourth claim alleges that trial counsel was ineffective when counsel failed to properly prepare for trial, failed to object to the repeated instances of prosecutorial misconduct, failed to obtain an expert DNA witness, and when trial

14

counsel failed to object when the prosecutor argued that petitioner was guilty because the police had considered and eliminated all other suspects.

Respondent contends that the petition could be dismissed on the ground that petitioner failed to properly exhaust his claim, of trial counsel's failure to prepare, with the Michigan courts.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and(c); *Picard v. Connor*, 404 U. S. 270, 275-278 (1971); *Hannah v. Conley*, 49 F. 3d 1193, 1195 (6th Cir. 1995).

Assuming that petitioner's claim has not been properly exhausted with the state courts, an unexhausted claim may nonetheless be rejected if it lacks merit. *See Burton v. Bock*, 239 F. Supp. 2d 686, 691 (E.D. Mich. 2002) (citing to 28 U.S.C. § 2254(b)(2); *Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir.1991)). In the interest of judicial economy, and to avoid any further burden on the state courts if the petitioner were to return there to attempt to exhaust this claim in a post-conviction motion, this Court will address petitioner's claim on the merits.

This Court addressed and rejected petitioner's second claim pertaining to trial counsel's failure to obtain a DNA expert.

Petitioner next alleges that trial counsel failed to prepare for trial and failed to object to instances of prosecutorial misconduct.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley*, 457 F. 3d 501, 528 (6th Cir. 2006).

Petitioner further alleges that trial counsel failed to properly prepare for trial, but does not explain what counsel should have done to prepare with the exception of an allegation that counsel "failed to review prior court testimony and pre-exam testimony." (Habeas Petition, Attachment G). The record reflects that trial counsel impeached Lee Plum with his preliminary examination testimony. (Tr. Dec. 3, 2008, pp. 76–79, 88–90, 197, 199, 203–204). Trial counsel also impeached Dr. Dragovic with his preliminary examination testimony. (Tr. Dec. 4, 2008, pp.32–33).

Other than the allegation that trial counsel failed to review court transcripts, petitioner does not indicate what additional information should have been elicited by defense counsel. A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would

have been material to his or her defense. *See Hutchison v. Bell*, 303 F. 3d 720, 748 (6th Cir. 2002). Petitioner cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare the case or obtain a DNA expert, because he has failed to show how additional pretrial work would have been beneficial to his defense. *See Martin v. Mitchell*, 280 F. 3d 594, 607-08 (6th Cir. 2002). Accordingly, Petitioner's claim that trial counsel failed to prepare, failed to review prior court testimony, failed to object to instances of prosecutorial misconduct, and failed to obtain a DNA expert is meritless.

### C. Claim # 3. Other Acts Evidence

In his third claim, petitioner claims that the trial court violated his rights by admitting other acts evidence in violation of M.R.E. 404(b).

Federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California

17

law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990) (admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003).

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Accordingly, for the foregoing reasons, the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

S/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: July 13, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 13, 2015, by electronic and/or U.S. First Class mail.

S/ Richard Loury  
Case Manager
